## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
## CIVIL ACTION NO. 8:24-CV-01410

ZURICH AMERICAN INSURANCE
COMPANY, AMERICAN GUARANTEE
AND LIABILITY INSURANCE COMPANY,
and AMERICAN ZURICH INSURANCE
COMPANY,

      Plaintiffs,

v.

NICHOLAS FINANCIAL, INC. and JEREMIAH T.
GROSS, as assignee of NICHOLAS FINANCIAL,

      Defendants.

_____/

## MOTION TO DISMISS OR STAY

Defendant Jeremiah T. Gross ("Defendant" or "Gross") requests the
Court exercise its discretion to dismiss or stay Plaintiffs' declaratory
judgment action because "another suit is pending in state court present-
ing the same issues, not governed by federal law, between the same par-
ties." *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th
Cir. 2005) (quoting *Brillhart v. Excess Insurance Co. of America*, 316 U.S.
491, 495 (1942)).[1] Specifically, there is a pending state court action in

---

[1] Gross brings this motion under Rule 12(b)(1) and 12(b)(6) but the
"Court need not decide which rule is applicable to the abstention analy-
sis." *Nat'l Specialty Ins. Co. v. S. Fla. Transp. Servs, Corp.*, 2021 WL
980948, at *8 n. 1 (S.D. Fla. Mar. 16, 2021); *Selton v. U.S. Bank Tr. Nat'l
Ass'n*, 124 F. Supp. 3d 1245, 1250 n.6 (M.D. Fla. 2015) (same).

1

Missouri, styled *Nicholas Financial Inc. v. Jeremiah T. Gross*, Nos. 21CY-CV02148, 21CY-CV02148-01, 21CY-CV02148-02 (Mo. Cir.) ("State Court Action") that involves the same parties and the same issues in the instant case.

Plaintiffs characterize this action as one seeking to resolve "the parties' legal rights, duties, and relationships with respect to insurance policies issued by Plaintiffs." (Doc. 1 ¶ 10). As explained in Plaintiffs' notice of removal of the State Court Action (which was subsequently remanded), Gross's counterclaim in state court seeks to resolve the same legal rights, duties, and relationships. (Notice of Removal – Ex. 1 ¶¶ 25–27; Gross's Counterclaim[2] – Ex. 2); *see also Gross*, 2024 WL 3814045, at *1 (characterizing the claims as "breach of contract, breach of the duty to defend, and bad faith failure to defend or settle").[3]

Considering the totality of the circumstances under the nine non-exhaustive *Ameritas* guideposts, the Court should dismiss or stay

---

[2] Although Gross's claim in state court "is styled as a crossclaim, it is more akin to a counterclaim because [Gross] and [Plaintiffs] are opposing parties in the underlying action not co-parties." *Id. Gross v. American Zurich Insurance Company*, 2024 WL 3814045, at *2 (W.D. Mo. Aug. 14, 2024)

[3] Gross respectfully requests this Court take judicial notice of the public records from *Gross v. American Zurich Insurance Company*, No. 4:24-CV-00399-DGK (W.D. Mo.) and the State Court Action. *Nat'l Specialty Ins. Co.*, 2021 WL 980948, at *8 n. 1; *Selton*, 124 F. Supp. 3d at 1250 n.6.

Plaintiffs' declaratory judgment action to heed the Supreme Court's warning to avoid "interference with the orderly and comprehensive disposition of [the] state court litigation…." *Ameritas*, 411 F.3d at 1330 (quoting *Brillhart,* 316 U.S. at 495).

## Background

On March 9, 2021, Nicholas Financial, Inc. ("NFI") commenced a civil action in Missouri state court against Gross to recover amounts he allegedly owed on a car loan. *Gross*, 2024 WL 3814045, at *1; (Doc. 1 ¶ 16; Ex. 2 ¶ 1). Gross "then filed a class action counterclaim alleging NFI violated Missouri's Uniform Commercial Code." *Id.*; (Doc. 1 ¶¶ 17–20; Ex. 2 ¶ 2). Plaintiffs "issued various insurance policies to NFI but determined the counterclaim's allegations did not trigger any coverage." *Id.*; (Doc. 1 ¶¶ 11–15, 21; Ex. 2 ¶¶ 3, 13–15). Plaintiffs and Gross "dispute whether this constitutes a failure to defend or indemnify NFI." *Id.* "After [Gross] and NFI entered into a settlement agreement, [Plaintiffs] intervened as a matter of right to defend against the claims asserted against NFI." *Id.*; (Doc. 1 ¶¶ 24, 27 n. 3; Ex. 2 ¶¶ 4, 9, 10, 12).

The state court held a class action fairness hearing, approved the settlement, and entered a "final judgment" that "approved the 'assignment to the Class of NFI's claims against certain insurers' including 'any claims of bad faith failure to settle, breach of the duty to defend, breach

of the duty to indemnify, and failure to procure adequate insurance.'" *Id*. The state court noted any "recovery against [Plaintiffs] will be added to the benefits made available to the Settlement Class." *Id*. The state court also determined that:

> Final Judgment is final for all purposes *except* for the determinations and assessments necessary to resolve any additional judgment against parties to this litigation to be determined by the Court in the future. Class Representative and/or the Class are granted leave to file any pleadings (new or amended) he and/or they wish for purposes of Paragraphs 6 and 7 of this Judgment.

*Id.* Additionally, the state "court noted that the question of '[d]amages will be decided at a later date.'" *Id*.

On May 15, 2024, the same day the state court entered its "final judgment," Gross filed a pleading against Plaintiffs in the State Court Action titled "Gross's Cross-Claim Against Insurers." *Id.*; (Ex. 2). "The purported crossclaim assert[ed] NFI's assigned claims including alleged breach of contract, breach of the duty to defend, and bad faith failure to defend or settle. *Id.*

On June 10, 2024, nearly a month after Gross filed his counterclaim in the State Court Action, Plaintiffs filed this declaratory judgment action seeking declarations about whether there is insurance coverage under the same insurance policies at issue in Gross's state court counterclaim. (Doc. 1 ¶¶ 11–15; Ex. 2 ¶¶ 13–15). On June 14, 2024, Plaintiffs

removed the State Court Action to the U.S. District Court for the Western District of Missouri. (Ex. 1). After finding Plaintiffs "lacked a reasonable basis to remove," the federal court remanded the State Court Action "back to the Circuit Court of Clay County, Missouri" and awarded Gross attorney's fees for the objectively unreasonable removal. *Gross*, 2024 WL 3814045, at *2.

## Argument

Where (as here) a federal lawsuit seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, a plaintiff has no absolute right to a federal forum. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995). The Declaratory Judgment Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion. *Id.* at 286, 290. This Court's discretion is guided by *Ameritas*.

"[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law,

between the same parties." *Ameritas,* 411 F.3d at 1330 (quoting *Brillhart,* 316 U.S. at 495). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* "[T]hese general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts," provides the Court nine factors to consider "in balancing state and federal interests." *Id.* at 1330–31 (internal quotes omitted).

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;
>
> (7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1331.

In assessing the *Ameritas* factors, the Eleventh Circuit has cautioned that *Ameritas* "essentially employ[s] a totality-of-the-circumstances standard," in which its guideposts "are not exhaustive; not all are required; and no one is controlling." *National Trust Insurance Co. v. Southern Heating and Cooling Inc.,* 12 F.4th 1278, 1286 (11th Cir. 2021). The guideposts merely further "the Supreme Court's admonitions in *Brillhart* and *Wilton.*" *Ameritas,* 411 F.3d at 1331. "[T]he similarity between concurrent proceedings is a consideration of significant weight." *National Trust*, 12 F.4th at 1285. "When a district court is deciding whether to dismiss or stay a § 2201(a) declaratory judgment action in favor of a concurrent proceeding … the degree of similarity between the proceedings is significant." *Id.*

Considering similarity of the concurrent proceedings and the totality of the circumstances under the nine non-exhaustive *Ameritas* guideposts, the Court should dismiss or stay Plaintiffs' declaratory judgment action in favor of the State Court Action. *See, e.g., Nationwide Mut. Ins.*

*Co. v. Barrow*, 2022 WL 14068890, at *3 (N.D. Ala. Oct. 24, 2022) (declining jurisdiction because both cases sought to resolve the same coverage questions).

**1. The strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts.**

Missouri has a significantly strong interest in this litigation for many reasons:

a.  Gross is a resident of Missouri. *National Trust*, 12 F.4th at 1288.

b.  Plaintiffs voluntarily entered the Missouri action and knowingly assumed the "responsibilities" of "any other party to the litigation," *Martin v. Busch,* 360 S.W.3d 854, 858 (Mo. App. 2011), including being subject to Gross's counterclaim about coverage under Mo. R. Civ. P. 55.32. *Gross*, 2024 WL 3814045, at *2.

c.  Missouri has jurisdiction over the State Court Action regarding violations of "Missouri's Uniform Commercial Code," *Gross*, 2024 WL 3814045, at *1, and retained jurisdiction to supervise and adjudicate issues regarding the settlement, any claims against NFI's insurers, and any recovery from NFI's insurers that "will be added to the benefits made available to the Settlement Class." *Gross*, 2024 WL 3814045, at *1; (Final Approval Order – Ex. 3 ¶ 17).

d. Missouri has jurisdiction not only over NFI, Plaintiffs, and Gross, but also has jurisdiction over the certified class who also took assignment of NFI's insurance rights and stands to benefit from them but is not a party to this litigation. *Gross*, 2024 WL 3814045, at *1 ("the state court approved the 'assignment to the Class of NFI's claims against certain insurers").

e. Missouri law applies to multiple issues. For example, Plaintiffs allege there is no coverage because the allegations in the underlying state court litigation "relate to" or are "premised on" "financial services" or "professional services." (Doc. 1 ¶¶ 28, 37–42). The state court found NFI's activities didn't involve "professional services, financial services, or lending services." (Final Judgment – Ex. 4 ¶ 13). Whether the state court's judgment was final as argued by Plaintiffs, *Gross*, 2024 WL 3814045, at *2, and the res judicata effect of that judgment will be controlled by Missouri law. *Kizzire v. Baptist Health System, Inc.,* 441 F.3d 1306, 1308–09 (11th Cir. 2006) (courts "must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation.")[4]

---

[4] Plaintiffs allege Florida law applies to the insurance policies. (Doc. 1 ¶ 8 n. 1). Taking Plaintiffs allegations as true, that may be correct but in the State Court Action, that will be decided based on Missouri's "conflicts

Plaintiffs also allege Gross's counterclaim was improperly filed in state court. (Doc. 1 ¶ 27 n. 3). Although Plaintiffs are wrong, *Gross*, 2024 WL 3814045, at *2, that is also an issue of Missouri law.[5]

The first *Ameritas* factor supports dismissal.

### 2. Whether the judgment in the federal declaratory action would settle the controversy.

A judgment here would ***not*** settle the controversy. The "controversy" for this factor is the underlying controversy (i.e., NFI's liability to Gross and the Class). *National Trust*, 12 F.4th at 1288–89; Pickett, 676 F.

---

of law doctrines." *Zafer Chiropractic & Sports Injs., P.A. v. Hermann*, 501 S.W.3d 545, 551 (Mo. App. 2016). Missouri applies Missouri applies the "most significant relationship" test to all claims but considers different factors for claims sounding in tort and contract. *Id.* at 550–51. For purposes of the *Ameritas* guideposts, whether Missouri or Florida law applies is irrelevant because regardless of which state's laws apply to certain issues, this "action raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law…." *American Modern Property and Cas. Ins. v. Pickett*, 676 F. Supp. 3d 1175, 1190 (S.D. Ala. 2023) (internal quotes omitted).

[5] Plaintiffs are appealing Paragraph 13 of the state court judgment. (Notice of Appeal – Ex. 5 p. 2). "In general, a party seeking appeal must be aggrieved by the judgment. Section 512.020, RSMo 2000. A party is aggrieved 'when the judgment operates prejudicially and directly on his personal or property rights or interests and such effect is immediate and not merely a possible remote consequence.'" *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 57 (Mo. 2005). By appealing, Plaintiffs are taking the position Paragraph 13 of the state court judgment regarding there being no "professional services, financial services, or lending services" operates prejudicially and directly on their position that they had no duty to defend or indemnify based on these exclusions.

Supp. 3d at 1185 ("For purposes of *Ameritas* analysis, then, 'the controversy' includes the claims and parties in the state action.") The declaratory judgment action will not resolve that controversy, so this factor weighs "in favor of dismissal to avoid piecemeal litigation." *Id.* at 1289. Here, as in *Ameritas*, this federal action implicates only "an incomplete set of parties and claims," while "the state action encompasse[s] the complete controversy," including liability, coverage, and all the parties (NFI, Gross, Plaintiffs, and the certified class). 411 F.3d at 1331. The second factor supports dismissal. *Mt. Hawley Ins. Co. v. JP Roosevelt, LLC*, 2020 WL 6134269, at *6 (S.D. Fla. Apr. 9, 2020).

### 3. Whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue.

This federal declaratory action serves no useful purpose. Plaintiffs seek a declaration that they "have no duty to defend or indemnify" NFI for the underlying litigation. (Doc. 1 ¶ 30). Gross seeks the same declaration in state court (Ex. 2 ¶¶ 39–40) and sued Plaintiffs for additional relief (*id.* ¶¶ 43–71). Because the state court is "fully equipped to resolve these questions and provide this clarification as well," federal clarification serves no "useful purpose" as required by *Ameritas*, such that this factor favors dismissal. *Argonaut Great Central Insurance Co. v. Andrews*, 2015 WL 736156 at *3 (S.D. Ala. 2015); *Phillips v. Bennink*, 2024

11

WL 2277784, at *4 (S.D. Fla. Apr. 26, 2024), *report and recommendation adopted*, 2024 WL 2273377 (S.D. Fla. May 20, 2024) ("The state trial court is fully capable and better suited to resolve the issues raised by Plaintiff here. Plaintiff's lawsuit is simply wasting scarce federal judicial resources.") "Further, if both lawsuits are allowed to proceed there is the possibility of inconsistent verdicts on the same issue among the same parties. Therefore, this factor also favors abstention." *Great Am. Ins. Co. v. Origis USA LLC*, 2023 WL 7217055, at *3 (S.D. Fla. Nov. 2, 2023).

### 4. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

Rather than serving any "useful purpose," Plaintiffs sole purpose in suing in federal court is to provide an arena for a race for res judicata ***and*** to achieve a federal hearing in a case otherwise not removable. On May 15, 2024, Gross filed claims against Plaintiffs regarding the same coverage issues raised in this litigation, which were not removable. *Gross*, 2024 WL 3814045.[6] Plaintiffs filed their duplicative claims here

---

[6] Plaintiffs' improper removal in *Gross* is further evidence of "procedural fencing" because the removal was found objectively unreasonable and the court ordered Plaintiffs to pay Gross's attorney's fees. *Id.* at *2; *National Trust*, 12 F.4th at 1287 ("procedural fencing [is] an umbrella term for the improper use of procedural mechanisms to avoid a merits ruling or to forum shop.")

twenty-six days later in a race for res judicata. (Doc. 1). "The Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." *National Trust*, 12 F.4th at 1287.

Procedural fencing concerns are even worse here than in other cases given the substantial similarity between Gross's state law coverage claims and this federal action. *Id.* ("The fourth *Ameritas* guidepost by its nature weighs more heavily in favor of declining jurisdiction as the similarity of concurrent proceedings increases.") Indeed, the state court retained jurisdiction over the same issues raised in this declaratory judgment action. *Gross*, 2024 WL 3814045, at *1; (Ex. 3 ¶ 17). Given the "state court had reserved jurisdiction over same issue raised in the declaratory judgment action, 'this action is necessarily a collateral attack on the state court's order and can serve no purpose other than `procedural fencing.'" *Mid-Continent Cas. Co. v. Northstar Homebuilders, Inc.*, 297 F. Supp. 3d 1329, 1336 (S.D. Fla. 2018) (quoting *Rhein v. Kevelson,* 2014 WL 6694744, at *4 (S.D. Fla. Nov. 26, 2014)). Plaintiffs are also seeking to collaterally attack the state court's ruling that NFI's activities didn't involve "professional services, financial services, or lending services" (Ex. 4 ¶ 13) by asking this Court to declare the opposite. (Doc. 1

¶¶ 28, 37–42). Attempts to "avoid a merits ruling" in state court is more evidence of procedural fencing. *National Trust*, 12 F.4th at 1285.

"Certainly serving as a Monday-morning quarterback is not the role Congress intended for the federal courts in the Declaratory Judgment Act." *Mid-Continent Cas. Co.*, 297 F. Supp. 3d at 1337. "Plaintiff[s] could have no motive here other than an attempt to obtain *res judicata* in a federal forum or to achieve a federal hearing in a case otherwise not removable." *Phillips*, 2024 WL 2277784, at *4. The fourth *Ameritas* guidepost weighs heavily for declining jurisdiction. *National Trust*, 12 F.4th at 1287.

### 5. Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction.

The "relevance and weight" of this factor is "driven by the degree of similarity between proceedings." *Id.* "When declaratory relief is sought with respect to issues presented in a pending state civil proceeding, ... the possibilities of inconsistent judgments from both forums promises increased friction." *Gibson v. Jackson*, 578 F.2d 1045, 1049–50 (5th Cir. 1978).[7]

---

[7] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were handed down before the close of business on September 30, 1981.

14

Here, Plaintiffs ask this Court to resolve state-centered legal and/or factual issues at the same time a state court is considering the same issues in substantially the same dispute. (Doc. 1; Ex 2). "This case creates the 'potential for friction inherent in having double-tracked, near-identical litigation pending in both federal and state courts, such that the first court's ruling on a particular issue may have res judicata effect on the second court's ability to hear and decide the same issue, even if the second court disagrees with the first court's determinations.'" *Gregory Haskin Chiropractic Clinics, Inc. v. State Farm Mut. Auto. Ins. Co.*, 391 F.Supp.3d 1151, 1156 (S.D. Fla. 2019). Friction between the Missouri state court and this Court is increased because Plaintiffs are also seeking to collaterally attack the state court's ruling that NFI's activities didn't involve "professional services, financial services, or lending services" (Ex. 4 ¶ 13) by asking this Court to declare the opposite. (Doc. 1 ¶¶ 28, 37–42).

Plaintiffs also allege Gross's counterclaim was improperly filed in state court. (Doc. 1 ¶ 27 n. 3). Although Plaintiffs are wrong, *Gross*, 2024 WL 3814045, at *2, asking this Court to declare Gross's counterclaim is improper under Missouri law or procedural rules is inconsistent "with the federalism and comity concerns animating *Ameritas*," *Pickett*, 676 F.

Supp. 3d at 1187, and "promises increased friction." *Gibson*, 578 F.2d at 1050.

"[T]he potential for friction between this Court and the state court overwhelmingly suggests that abstention is appropriate here." *Certain Underwriters at Lloyd's, London v. Edenfield*, 2023 WL 2616943, at *9 (S.D. Ga. Mar. 23, 2023)

### 6. Whether there is an alternative remedy that is better or more effective.

The "relevance and weight" of this factor is "driven by the degree of similarity between proceedings." *National Trust,* 12 F.4th at 1287. The coverage dispute in state court and this Court are substantially similar, if not identical. The State Court Action is a superior remedy because it, unlike this action, is all-encompassing in its scope, such that deferring to it avoids the inefficiencies of duplicative litigation. "An all-encompassing state action is a vastly superior remedy because the state court can more effectively and efficiently decide the overlapping issues." *Pickett*, 676 F. Supp. 3d at 1189 (internal quotes omitted). The Eleventh Circuit has agreed with this approach. *Id.* (citing *National Trust,* 12 F.4th at 1289); *see also Geico Gen. Ins. Co. v. Kastenolz*, 649 F. App'x 647, 650–51 (11th Cir. 2016) (affirming district court's finding that the sixth factor favored abstention because "allowing multiple proceedings where a state

court is capable of resolving all the issues would not further judicial effi-

ciency.") As have other courts in this Circuit. *Mt. Hawley Ins. Co.*, 2020

WL 6134269, at *7 (collecting cases); *see also*, *e.g.*, *GEICO General Ins.*

*Co. v. Lacayo*, 2015 WL 4464020, at *3 (S.D. Fla. July 21, 2015) ("The

state court can provide an alternative remedy that is better and more

effective: it can dispose of the entire controversy at once. Adjudication of

multiple claims by a single court is no doubt better and more effective.");

*United Specialty Ins. Co. v. Pulte Home Corp., Inc.*, 2018 WL 3827640, at

*3 (M.D. Fla. Mar. 28, 2018) (same); *Travelers Home & Marine Ins. Co.*

*v. Calhoun*, 2013 WL 12148861, at *6 (M.D. Fla. Oct. 25, 2013) (same).

As in the cited cases, the more expansive nature of the State Court

Action reflects that the sixth factor also favors dismissal.

### 7. Whether the underlying factual issues are important to an informed resolution of the case.

The "relevance and weight" of this factor is "driven by the degree of

similarity between proceedings." *National Trust,* 12 F.4th at 1287. The

coverage dispute in the State Court Action and this Court are substan-

tially similar, if not identical, so this factor favors dismissal. Indeed, res-

olution of whether NFI's activities involved "professional services" or "fi-

nancial services" is critical to Plaintiffs' claims for declaratory relief.

(Doc. 1 ¶¶ 28, 37–42). The state court found that NFI's activities didn't

involve "professional services, financial services, or lending services" (Ex. 4 ¶ 13) and Plaintiffs are appealing that finding in state court. (Ex. 5 p. 2). "Consequently, the underlying factual issues are important to an informed resolution of the case." *Kastenolz*, 649 F. App'x at 651 (affirming district court's finding that the seventh factor favored abstention); *see also Mt. Hawley Ins. Co.*, 2020 WL 6134269, at *8 (collecting cases).

### 8. Whether the state trial court is in a better position to evaluate those factual issues than is the federal court.

"Typically, a declaratory judgment action filed in federal court arises from an underlying suit that was filed in state court, leading the federal court conducting the *Ameritas* analysis to find that the state court is already familiar with the factual issues and therefore in the best position to evaluate the facts and declare the parties' rights under the applicable insurance contract." *United Specialty Ins. Co.*, 2018 WL 3827640, at *3. The same is true here given the State Court Action has been pending for over three years. (Doc. 1 ¶ 16). The "relevance and weight" of this factor is also "driven by the degree of similarity between proceedings." *National Trust,* 12 F.4th at 1287. The coverage dispute in the State Court Action and this Court are substantially similar, if not identical, so this factor favors dismissal. *See Mt. Hawley Ins. Co.*, 2020 WL 6134269, at *8 (collecting cases).

18

9. **Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.**

"When, as here, the federal declaratory action raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law, this guidepost unambiguously weighs in favor of dismissal." *Pickett*, 676 F. Supp. 3d at 1189 (internal quotes omitted). Because there are "no federal legal questions at issue in this federal declaratory action or the state court action…. this factor weighs heavily in favor of dismissal." *Calhoun*, 2013 WL 12148861, at *6; *see also Mt. Hawley Ins. Co.*, 2020 WL 6134269, at *8 (collecting cases).

## Conclusion

"District courts have 'substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings.'" *United Specialty Ins. Co.*, 2018 WL 3827640, at *4 (quoting *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 F. App'x 813, 816 (11th Cir. 2008)). But "numerous courts engaging in abstention have elected to dismiss the declaratory action without prejudice, rather than staying it." *Id.* Because the *Ameritas* factors all weigh heavily for abstention, especially when giving "significant weight" to "the similarity between concurrent proceedings," *National Trust*, 12 F.4th at 1285, Defendant requests

the Court to dismiss Plaintiffs' declaratory judgment action. Alternatively, Defendant requests the Court stay Plaintiffs' declaratory judgment action pending resolution of the Missouri State Court Action and for such further relief as the Court considers just, fair, and proper.

Dated: August 29, 2024        Respectfully submitted,

        **K&L GATES LLP**
        Southeast Financial Center
        200 S. Biscayne Boulevard
        Suite 3900
        Miami, FL 33131-2399
        Tel.: 305-539-3300
        Fax: 305-358-7095
        */s/ Robert Shawn Hogue*
        Robert Shawn Hogue, Esq.
        Florida Bar No. 91155
        shawn.hogue@klgates.com

        *Attorneys for Jeremiah T. Gross*

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Mr. Gross conferred with counsel for Plaintiffs pursuant to Local Rule 3.01(g) via electronic mail before filing this Motion. Counsel for Plaintiffs responded via electronic mail that the Plaintiffs do not consent to the relief requested by Mr. Gross.

## CERTIFICATE OF SERVICE

The foregoing document was filed electronically in accordance with the local rules and was therefore served electronically on those parties that have properly registered for such electronic service:

Ilana B. Olman, Esq.
Florida Bar No. 106066
Email: iolman@smsm.com
Nicholas E. Richardson, Esq.
Florida Bar No. 1024637
Email: nrichardson@smsm.com
Segal Mccambridge Singer & Mahoney, Ltd.
200 East Las Olas Blvd., Suite 1820
Fort Lauderdale, FL 33301
Telephone: 954-765-1001

*Counsel for Plaintiffs*

Meghan C. Moore, Esq.
Florida Bar No. 668958
Email: meghan.moore@flastergreenberg.com
Flaster Greenberg PC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Telephone: 561-961-4508

*Counsel for Defendant, Nicholas Financial, Inc.*

Dated: August 29, 2024

*/s/ Robert Shawn Hogue*
Robert Shawn Hogue