IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZURICH AMERICAN INSURANCE
COMPANY, AMERICAN GUARANTEE      CASE NO. 8:24-cv-01410
AND LIABILITY INSURANCE
COMPANY, and AMERICAN ZURICH
INSURANCE COMPANY,

       Plaintiffs,

vs.

JEREMIAH T. GROSS, as assignee of
NICHOLAS FINANCIAL, INC.,

HARTFORD INSURANCE
COMPANY OF THE MIDWEST,

HARTFORD FIRE INSURANCE
COMPANY,

and

HARTFORD CASUALTY
INSURANCE COMPANY,

       Defendants.

_____

## FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY

("ZAIC"), AMERICAN GUARANTEE AND LIABILITY INSURANCE

COMPANY ("AGLIC"), and AMERICAN ZURICH INSURANCE COMPANY

("AZIC") (collectively, "ZURICH"), by and through the undersigned counsel files this First Amended Complaint against Defendants, JEREMIAH T. GROSS ("GROSS"), as assignee of NICHOLAS FINANCIAL, INC. ("NFI"), HARTFORD INSURANCE COMPANY OF THE MIDWEST ("HICM"), HARTFORD FIRE INSURANCE COMPANY ("HFIC") and HARTFORD CASUALTY INSURANCE COMPANY ("HCIC") (collectively "HARTFORD") and as grounds therefore states as follows:

### Nature of Plaintiffs' Claims

1.      This is an action that seeks declaratory relief pursuant to Fed. R. Civ. P. 57, for the purpose of resolving a present, real and substantial controversy among the parties concerning the parties' legal rights, duties, and relationships with respect to insurance policies issued by Plaintiffs ZAIC, AGLIC, and AZIC, including a present, real and substantial controversy concerning allocation of any legal rights and duties as between the insurance policies issued by Plaintiffs and HARTFORD to NFI.

2.      In addition, to the extent the Court finds Plaintiffs owe any obligation to NFI, Plaintiffs seek relief by way of contribution and equitable subrogation against HARTFORD, which also issued insurance policies to NFI, with

substantially similar terms and conditions to Plaintiffs' policies, and which were in force during subsequent years of the class period.

3.     Based upon the Class Action and the Class Action Settlement Agreement and Release, which includes an assignment of NFI's claims and rights against certain insurance policies, no coverage exists for such claims under the Zurich Policies.

4.     Accordingly, Plaintiffs seek the following relief:

    a.  A declaration that ZAIC, AGLIC, and AZIC have no duty to defend or indemnify NFI under the Zurich Policies relative to the Class Action brought by GROSS;

    b.  A declaration that there was no wrongful denial of coverage by Plaintiffs in the Class Action, and thereby Plaintiffs do not owe any obligation to GROSS (as assignee of NFI), under the Zurich Policies relating to or arising from the Class Action;

    c.  A declaration to the extent that the Court finds Plaintiffs have a duty to defend or indemnify GROSS (as assignee of NFI), that Plaintiffs and HARTFORD share a pro rata obligation to GROSS (as assignee of NFI) under the respective Zurich Policies and

Hartford Policies issued to NFI and in effect during the class period, relating to or arising from the Class Action;

d. A declaration to the extent that the Court finds that Plaintiffs and HARTFORD have any obligation to GROSS (as assignee of NFI), under the respective Zurich Policies and Hartford Policies issued to NFI, that any such defense or indemnity obligation be allocated based upon the respective policy years in relation to the claims in the Class Action;

e. To the extent the Court finds Plaintiffs are obligated to pay defense fees/costs or indemnify GROSS, that the Court find that HARTFORD must contribute its allocable share of the obligation based upon each carrier's respective policy years in relation to the claims in the Class Action; and

f. To the extent the Court finds that Plaintiffs are obligated to pay defense fees/costs or indemnify GROSS, that the Court find that Plaintiffs are entitled to recovery of HARTFORD's equitable share of any amounts of defense fees/costs or indemnity it is obligated to pay GROSS based upon each carrier's respective policy years in relation to the claims in the Class Action.

### Parties

5.      ZAIC is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196. ZAIC is authorized to transact business and has transacted business in Florida.

6.      AGLIC is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196. AGLIC is authorized to transact business and has transacted business in Florida.

7.      AZIC is an Illinois corporation engaged in the insurance business with a statutory home office and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196. AZIC is authorized to transact business and has transacted business in Florida.

8.      NICHOLAS FINANCIAL, INC. ("NFI")[1] is a financial lender incorporated in Florida, with its principal place of business in Clearwater, Florida.

---

[1] The Parties previously stipulated to the dismissal, without prejudice, of NFI. *See* Endorsed Order entered August 12, 2024, D.E. 23.

9.     GROSS is a citizen of Kansas City, Missouri in Clay County. As assignee of NFI, a Florida corporation, concerning the rights and coverage under the policies, GROSS is deemed a citizen of Florida.

10.     HICM is a Connecticut corporation engaged in the insurance business with a home office and principal place of business located at 1 Hartford Plaza, Hartford, CT 06155. HICM is authorized to transact business and has transacted business in Florida.

11.     HFIC is a Connecticut corporation engaged in the insurance business with a home office and principal place of business located at 1 Hartford Plaza, Hartford, CT 06155. HFIC is authorized to transact business and has transacted business in Florida.

12.     HCIC is a Connecticut corporation engaged in the insurance business with a home office and principal place of business located at 1 Hartford Plaza, Hartford, CT 06155. HCIC is authorized to transact business and has transacted business in Florida.

## Jurisdiction and Venue

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.

6

14.     Plaintiffs, ZAIC, AGLIC and AZIC are not citizens of the same state(s) as Defendants GROSS and HARTFORD. Accordingly, there is complete diversity as between the parties.

15.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 as the subject policies, *infra*, were issued and delivered to NFI in Clearwater, Florida by its brokers/producers in Florida. The issuance and delivery of the insurance policies by ZURICH and HARTFORD to NFI is a substantial part of the event giving rise to the subject claim concerning the rights and coverage under said insurance policies.[2]

16.     ZAIC, AGLIC, and AZIC have performed all conditions precedent to the institution of this action, or the conditions have been excused or otherwise waived.

### Insurance Policies

---

[2] To determine which state law applies to an insurance policy when that policy does not have a choice of law clause, Florida courts follow the doctrine of *lex loci contractus*. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006).  This doctrine provides that the governing law is "the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Fioretti v. Mass Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995).  The Florida Supreme Court has held that the *lex loci contractus* rule, which provides that the law of the state where an insurance contract is executed is the law that "governs the rights and liabilities of the parties in determining an issue of insurance contract".  *Rando v. Gov't Empls. Ins. Co.*, 39 So. 3d 244, 247 (Fla. 2010).

17.     Plaintiff ZAIC, as successor by merger with Maryland Casualty Company and Assurance Company of America, issued Commercial General Liability policies, Policy Nos. 38508751 to NFI with effective policy periods spanning from 2001 to 2010 and Policy Nos. 04002251 to NFI with effective policy periods spanning from 2009 to 2013 ("ZAIC CGL PAS policies"). Plaintiff ZAIC, as successor by merger with Maryland Casualty Company and Assurance Company of America, also issued Commercial Umbrella policies, Policy Nos. 38508751 to NFI with effective policy periods spanning from 2002 to 2010 and Policy Nos. 04002251 to NFI with effective policy periods spanning from 2009 to 2013 ("ZAIC CU PAS Policies"). Collectively the ZAIC CGL PAS Policies and the ZAIC CU PAS Policies are referred to herein as "ZAIC PAS Policies". *See* ZAIC PAS Policies, attached as **EXHIBIT A**.

18.     Plaintiff AGLIC issued Commercial Liability Policy Nos. CPO 57816654-00 through CPO 5781654-02 to NFI, which have effective policy periods spanning from December 22, 2013, through December 22, 2016 ("AGLIC CGL CPO Policies"). *See* AGLIC CGL CPO Policies, attached as **EXHIBIT B**.

19.     Plaintiff AZIC issued Commercial Liability Policy Nos. CPO 5781654-03 through CPO 5781654-06 to NFI, which have effective policy periods spanning

from December 22, 2016, through April 1, 2020 ("AZIC CGL CPO Policies"). *See* AZIC CGL CPO Policies, attached as **EXHIBIT C**.

20. Plaintiff AGLIC also issued Commercial Umbrella Policy Nos. AUC 5781728-00 through AUC 5781728-06 to NFI, which have effective policy periods spanning from December 22, 2013, through April 1, 2020 ("AGLIC CU AUC Policies"). *See* AGLIC CU AUC Policies, attached as **EXHIBIT D**.

21. The above referenced policies attached as Ex. A – D are collectively referred to herein as the "Zurich Policies".

22. Based upon information and belief, Defendant HICM issued a Commercial Liability Policy No. 21 UUN DF0813 to NFI, which has an effective policy period from April 1, 2020 through April 1, 2021 ("HICM CGL Policy"). *See* HICMCGL Policy, attached as **EXHIBIT E**.

23. Based upon information and belief, Defendant HFIC issued Commercial Liability Policies, No. 21 UUN DF0813 to NFI, which have effective policy periods spanning from April 1, 2021 through April 1, 2023 ("HFIC Commercial Liability Policies"). *See* HFIC CGL Policies, attached as **EXHIBIT F**. [3]

---

[3] Copies of the HFIC CGL Policies that are currently in Plaintiffs' possession are attached hereto. Plaintiffs intend to request full and complete copies of the HICM Commercial Liability policies via discovery.

24.     Based upon information and belief, Defendant HCIC issued Commercial Umbrella Policies No. 21 XHU DF0184 to NFI, which have effective policy periods spanning from April 1, 2020 through April 1, 2023 ("HCIC CU Policies"). *See* HCIC CU Policies, attached as **EXHIBIT G**.

25.     The above referenced policies attached as Ex. E-G are collectively referred to herein as the "Hartford Policies".

## The Underlying Class Action

26.     On or around March 09, 2021, NFI filed a Petition for Deficiency on Retail Installment Contract and Security Agreement against GROSS in his individual capacity in the Associate Court of Clay County, Missouri, Case No. 21CY-CV02148, styled *Nicholas Financial Inc. v. Jeremiah T. Gross*.[4]

27.     On or around March 23, 2022, GROSS filed an Answer and Counterclaim in the form of a putative consumer class action against NFI, alleging that NFI had engaged in unlawful and deceptive patterns of wrongdoing regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies (the "Class Action").

---

[4] Case No. 21CY-CV02148 was originally assigned to the petition, which was filed in The Associate Court of Missouri. A default judgment was entered against GROSS on April 22, 2021, which was set aside March 23, 2022. After the default judgment was set aside, GROSS's Answer and Counterclaim were filed under Case No. 21CY-CV02148-01. The Case was then certified to the Circuit Court under Case. No CV02148-02.

28.     On or around April 13, 2022, GROSS filed an amended Answer and Counterclaim. This amended Answer and Counterclaim is the operative pleading, as there were no further amendments. *See* Answer and Counterclaim, attached as **EXHIBIT H**.

29.     The Class Action alleged that NFI engaged in unlawful and deceptive wrongdoing "regarding collection, enforcement, repossession, and disposition of collateral, and collection of alleged deficiencies." Ex. H ¶ 1.

30.     The Class Action alleged that:

a.   NFI mailed deficient presale notices to the class members. *See* Ex. H ¶ 100-101.

b.   NFI failed to provide "reasonable authenticated notice of disposition" to the class members. *See* Ex. H ¶ 102.

c.   NFI reported derogatory information about class members to credit agencies. *See* Ex. H ¶ 103.

d.   NFI charged Missouri subclass members post-default, prejudgment interest and fees, causing right to cure notices to be deficient, violating Missouri State law. *See* Ex. H ¶ 108.

31.     The Class Action alleged NFI's failure to comply with these statutory notice requirements prohibited NFI from properly proceeding on repossessing

GROSS's and the Class's vehicles, seeking to obtain deficiency judgments against GROSS and the Class, and reporting GROSS's and the Class's defaults and/or deficiencies to credit bureaus. *See* Ex. H, *gen*. and, *e.g.*, ¶¶ 17, 19, 61-63, 65, 76, 103-105, 113, 117, 121-123, 125.

32.    The Class Action alleged GROSS and the Class suffered damages arising out of NFI's alleged violation of consumer notice provision statutes under the Uniform Commercial Code and its state equivalents. *See* Ex. H, *gen*. and ¶¶ 104-105, 125.

33.    On May 6, 2022, NFI advised ZURICH of the Class Action and ZURICH began communicating with NFI while it investigated the claims.

34.    On June 24, 2022, ZURICH provided NFI a letter pursuant to Florida Statute § 627.4137, in which it identified, *inter alia*, the Zurich Policies and potential policy or coverage defenses which ZURICH reasonably believed were available to it at the time, and included copies of the Zurich Policies. *See* June 24, 2022 Correspondence, attached as **EXHIBIT I.**

35.    Following this correspondence, ZURICH continued to investigate coverage under the Zurich Policies and actively communicated the status of its investigation with NFI.

36.     On July 20, 2022, ZURICH communicated with NFI, through its retained coverage counsel, and advised NFI that based on ZURICH'S preliminary investigation, there did not appear to be coverage for the Class Action under the Zurich Policies and that the claim should likely be presented to NFI's professional liability insurance carrier. However, Zurich did not deny coverage under the Zurich Policies.

37.     Gemini Insurance Company issued a Professional Liability Insurance Policy to NFI providing coverage for any loss or claim expenses because of claims for, *inter alia*, any negligent act, error, or omission or breach of a professional duty committed by NFI solely in the rendering of or failure to render "Professional Services." The Gemini Policy defines "Professional Services" as "[s]oley in the performance of auto lending services provided to others for a fee or other form of compensation."

38.     NFI, through its retained coverage counsel, represented that although NFI had tendered the claim to Gemini, Gemini had disclaimed coverage and NFI believed Gemini was "dead wrong" and would continue to pursue coverage under the Gemini Policy. NFI, through its retained coverage counsel, further agreed that there was no coverage for the Class Action under the Zurich Policies.

39.     ZURICH communicated that it was preparing to file a declaratory judgment action to obtain a judicial declaration that the Zurich Policies provided no coverage for the Class Action, but NFI represented that a declaratory judgment action was not necessary and instead requested that ZURICH send it correspondence to demonstrate that there was no coverage.

40.     Following these communications, ZURICH continued to investigate coverage under the Zurich Policies and actively communicated the status of its investigation with NFI.

41.     On August 26, 2022, NFI advised ZURICH that Gemini had agreed to afford NFI a defense against the Class Action which was consistent with the Gemini Policy's provision of coverage specifically for the performance of auto lending services out of which the allegations and claims in the Class Action arose.

42.     NFI further advised that because Gemini was defending it, there was no need for ZURICH to file a declaratory judgment action concerning ZURICH'S coverage position but that NFI would advise if its position changed in any way.

43.     On September 6, 2022, as specifically requested by NFI, ZURICH sent NFI a coverage position letter summarizing ZURICH'S coverage investigation and its communications with NFI. *See* Coverage Position Letter, attached as **EXHIBIT I.**

14

44.     Specifically, ZURICH advised that none of the allegations of the Counterclaim appeared to trigger coverage under the Zurich Policies and communicated that ZURICH reserved all rights under the Zurich Policies, specifically noting that "[n]othing in this letter shall be construed as a disclaimer." *See* Ex. J at 10.

45.     In addition, ZURICH requested NFI provide it with any information which it believed placed the Class Action within coverage of the Zurich Policies so that ZURICH could conduct further analysis based on that information. *See id*.

46.     Further, ZURICH confirmed its prior discussions with NFI regarding Gemini's defense of the Class Action and that ZURICH would refrain from filing a declaratory judgment action at NFI's request. Specifically, ZURICH confirmed:

> As we have discussed, it would appear that the proper coverage and defense obligations would fall under Professional Liability policies obtained by Nicholas Financial. We understand that Gemini Insurance has now accepted defense of Nicholas under the policy(ies) it issued to Nicholas Financial. As you previously indicated, you do not believe that the Carriers need to file a declaratory judgment action at this time, given the current state of defense of your client by Gemini. If your position changes on this in anyway, please contact our office beforehand to discuss your position.

*See id.*

47.     ZURICH did not deny coverage to NFI and expressly conveyed to NFI that its coverage position should not be construed to be a disclaimer.

15

48.     At no point did NFI dispute ZURICH'S coverage position and at no point did NFI provide any information that would challenge or alter ZURICH'S coverage position.

49.     Upon information and belief, pursuant to the terms of its policy affording liability coverage for "professional services", Gemini continued to defend NFI in the Class Action for the next eighteen months, including participating in settlement discussions without notice to ZURICH.

50.     Upon information and belief, NFI, GROSS and the Class reached a settlement agreement prior to November 17, 2023 at which time they scheduled a hearing for preliminary approval of a settlement on November 29, 2023 that was then continued until January 31, 2024, and again continued until February 21, 2024.

51.     On February 20, 2024, without providing any notice to ZURICH and despite the fact that ZURICH had never denied coverage to NFI, NFI and GROSS signed a formal written Class Action Settlement Agreement and, the following day, filed a Joint Motion for Preliminary Approval of Class Action Settlement and a proposed order, and attended a preliminary approval hearing at which the Class Action Settlement was approved by the court.

52.     Pursuant to the terms of the Class Action Settlement Agreement, NFI agreed to enter into a consent judgment in an amount to be determined by the

court, and agreed to assign to GROSS its claims and rights against insurers, including ZURICH and HARTFORD, and insurance agents, to seek payment of said judgment via claims including those for bad faith failure to settle, breach of the duty to defend, breach of the duty to indemnify, and failure to procure adequate insurance. *See* Class Action Settlement Agreement and Release, attached as **EXHIBIT N**.[5]

53.     The claims against ZURICH and HARTFORD assigned to GROSS under the Class Action Settlement Agreement were based on the "Released Claims" enumerated in the Class Action Settlement Agreement as:

a)  The repossession and disposition of personal property collateral in connection with any of NFI's loans encompassed by the Settlement Class;
b)  Any claim (but not affirmative defenses) relating to the inadequacy or insufficiency of any notice or disclosure regarding repossession or a deficiency balance that NFI provided (or failed to provide) to any Settlement Class Member;
c)  NFI's alleged violation of the Uniform Commercial Code with respect to repossession of collateral and notices required before or after repossession of collateral;
d)  NFI's alleged violation of the Uniform Commercial Code with respect to sales of collateral and notices required before or after sales of collateral;
e)  Loans made to any Settlement Class Member;
f)  Credit reporting for any loan made to any Settlement Class Member;
g)  Any judgment NFI obtained against any Settlement Class Member; or

---

[5] The list of insurers that were subject to the assignment by NFI to GROSS are identified in Exhibit C of the Class Action Settlement Agreement and Release. *See* Ex. N, "Schedule of Insurers and Policies" (Exhibit C).

h) Any claim or cause of action asserted in this Litigation or which could have been asserted in this Litigation based on the facts alleged in the pleadings in this Litigation

*See* Ex. N § 1.18, Released Claims; Ex. N § 3.15, Judgment.

54.     Under the Class Action Settlement Agreement, GROSS and NFI also agreed to a Settlement Class Definition to be certified by the court as:

All persons who NFI mailed a presale notice or post-sale explanation between April 1, 2016 and December 1, 2022, except for those persons: (a) against whom NFI has obtained a final deficiency judgment; (b) who filed for bankruptcy after the date on which NFI sold their collateral and whose bankruptcy ended in discharge rather than dismissal; and (c) whose loans were sold, conveyed, assigned, or otherwise transferred by NFI prior to the date on which the Court issues its Preliminary Approval Order.

*See* Ex. N § 2, Certification of the Settlement Class.

55.     Despite agreeing with ZURICH'S coverage position and never contesting the apparent lack of coverage under the Zurich Policies, on March 6, 2024, eighteen months after agreeing that the Zurich Policies provided no coverage for the Class Action, NFI sent ZURICH correspondence notifying that it was now NFI's position that ZURICH had "refused to defend and indemnify [NFI] in connection with the [Class Action]" and providing formal notice that NFI had executed a non-execution and settlement agreement in which it assigned all of its

rights under the Zurich Policies, Hartford Policies and other policies to GROSS and the Class. *See* March 6, 2024 Notices, attached as **EXHIBITS K, L,** and **M.** [6]

56.     By way of this correspondence, ZURICH learned that HARTFORD issued CGL and CU policies for policy periods following the Zurich Policies' periods. However, ZURICH was not aware of the terms and provisions of the Hartford Policies until recently, after it originally filed this action.

57.     ZURICH and HARTFORD both issued insurance policies to NFI for policy periods during the relevant class period.

58.     The Hartford Policies contain substantively identical or similar relevant policy provisions and exclusions as those found in the Zurich Policies.

59.     Based upon information and belief, HARTFORD did not provide a defense to NFI in the Class Action.

60.      On May 15, 2024, the court entered judgment in the Class Action in accordance with the Class Action Settlement Agreement, which is now on appeal.

---

[6] On April 5, 2024, Plaintiffs filed a Motion to Intervene and Answer to the Counterclaim in the Class Action. This is a procedure authorized under Missouri law pursuant to Mo. Rev. Stat. § 537.065 and Mo. R. Civ. P. R. 52.12. The Motion to Intervene was granted on April 9, 2024. On May 15, 2024, Defendant, GROSS improperly filed a Cross-Claim against Plaintiffs in the Associate Circuit Court of Clay County, Missouri, related to coverage under the Zurich Policies, for which several grounds for dismissal have been pursued, and are currently the subject of an appeal pending in the Missouri Court of Appeal, Western District (Case No. WD87292).

61.     As set forth in Plaintiffs' June 24, 2022 Correspondence   and September 6, 2022 Coverage Position Letter, the operative pleading in the Class Action does not allege any facts that bring the Class Action within the scope of coverage under the Zurich Policies' respective Insuring Agreements, and are subject to exclusions found in the Zurich Policies issued by ZAIC, AGLIC and AZIC to NFI (*see* ¶¶ 17-21, herein), including but not limited to exclusions that preclude coverage for damages arising out of the provision of professional and/or financial services, damages arising out of conduct that violates laws limiting the communication of information, and damages arising out of the disclosure of confidential or personal information.

62.     Further, for the same reasons, the judgment entered in the Class Action does not impose any liability on NFI for claims or damages for which there is coverage under the Zurich Policies.

63.     As neither the operative pleading nor the judgment in the Class Action asserts or imposes liability for damages covered by the Zurich Policies, there is no duty to defend or indemnify NFI under the Zurich Policies relative to any liability arising from the Class Action.

## COUNT I – ZAIC'S CLAIM FOR DECLARATORY JUDGMENT AGAINST GROSS REGARDING THE ZAIC PAS POLICIES

64.     Plaintiff, ZAIC realleges all previous paragraphs as fully set forth herein.

65.     This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57.

**The ZAIC CGL PAS Policies**

66.     The Insuring Agreement for Coverage A of the ZAIC CGL PAS Policies provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. The ZAIC CGL PAS Policies provide that the insurance applies only if the "bodily injury" or "property damage" takes place during the policy period and is caused by an "occurrence" that takes place in the "coverage territory." Moreover, "occurrence" is defined in the ZAIC CGL PAS Policies to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions". *See* Ex. A.

67.     Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "bodily injury" or "property damage" caused by an "occurrence", as defined. Accordingly, there is no coverage afforded under Coverage A of the ZAIC CGL PAS Policies.

68.     Coverage A also contains an exclusion for "personal and advertising injury." *See* Ex. A. Thus, to the extent the Class Action alleges any "personal and

21

advertising injury," as defined, it is excluded under Coverage A of the PAS CGL Policies.

69.     Additionally, all of the ZAIC CGL PAS Policy period(s) pre-date the class period applicable to the Class Action, as agreed by GROSS and NFI to be between April 1, 2016 and December 1, 2022. *See* Ex. N at § 2, Certification of the Settlement Class. Accordingly, there is no coverage afforded under the ZAIC CGL PAS Policies.

70.     Further, Coverage B does not apply, as the ZAIC CGL PAS Policies contain an Exclusion – Personal and Advertising Injury, which provides that "COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply." Pursuant to this exclusion, the ZAIC CGL PAS Policies expressly preclude coverage for "personal and advertising injury". *See* Ex. A.

71.     Moreover, beginning with the 2006-2007 policy period, the ZAIC CGL PAS Policies contain a Financial Services Exclusion which provides in relevant part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to: . . .(3) Lending, or arranging for the lending of money…(4) Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors; (5) Checking or reporting of credit; (6) Maintaining of financial accounts or records . . . .

*See* Ex. A.

72.     Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action result from the rendering of or failure to render financial services by NFI in that they are related to NFI's conduct with respect to its position as creditor of secured collateral and debt owed to it, issuance of notices regarding those financial transactions, repossession of personal property constituting secured collateral, sale of personal property constituting secured collateral, and its obligations and duties for properly maintaining the financial accounts and/or records relating to these transactions. *See* Ex. H, *gen*.

73.     Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Financial Services Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Financial Services Exclusion and therefore, coverage is excluded under the ZAIC CGL PAS Policies beginning in 2006 on this basis.

74.     Further, beginning in the 2007-2008 Policy Period, the ZAIC CGL PAS Policies contain a Violation of Laws Exclusion that provides, in relevant part, that insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate…c. any statute, ordinance or regulation…that

23

prohibits or limits the sending, transmitting, communicating or distribution of material or information." *See* Ex. A.

75.     Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action arise directly or indirectly out of acts or omissions that are alleged to violate statutes that prohibit or limit the sending, transmitting, communicating or distribution of material or information in that they are based on NFI's conduct that is alleged to have violated statutes that prohibit and limit what information and material NFI can communicate or send to its customers and to third parties. *See* Ex. H, *gen*.

76.     Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Violation of Laws Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Violation of Laws Exclusion and therefore, coverage is excluded under the ZAIC CGL PAS Policies beginning in 2007 on this basis.

77.     In addition to the foregoing, the ZAIC CGL PAS Policies contain a Professional Services Exclusion for "'[b]odily injury' or 'property damage' arising out of the rendering or failure to render any professional service, including but not limited to: (a) Accounting…financial…services, advice and instruction". *See* Ex. A.

78.     Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from the rendering of or failure to render professional services by NFI in that they are related to NFI's conduct that requires specialized skill, training and knowledge and is subject to governmental or other regulation for which NFI receives compensation or other valuable consideration. *See* Ex. H, *gen*.

79.     Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Professional Services Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Professional Services Exclusion and therefore, coverage is excluded under the ZAIC CGL PAS Policies on this basis.

80.     Because the Class Action does not implicate "bodily injury" or "property damage" occurring during the policy period and caused by an "occurrence" as required to active coverage under the Insuring Agreements, and all the allegations and claims in the Class Action are otherwise subject to exclusions found in the ZAIC CGL PAS Policies, ZAIC has no duty to defend or indemnify NFI in the Class Action, nor does it have any obligations to NFI or GROSS (as purported assignee) arising from or related to the Class Action.

### The ZAIC CU PAS Policies

81.     With regard to the ZAIC CU PAS Policies, Section 1.01 provides in relevant part that ZAIC will pay on behalf of the insured those sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" occurring during the policy period and caused by an "occurrence". Moreover, "occurrence" is defined in the ZAIC CU PAS Policies to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions". *See* Ex. A.

82.     Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "bodily injury" or "property damage" caused by an "occurrence", as defined. Accordingly, there is no coverage afforded under the ZAIC CU PAS Policies.

83.     Additionally, all of the ZAIC Umbrella PAS policy period(s) pre-date the class period applicable to the Class Action, as agreed by GROSS and NFI to be between April 1, 2016 and December 1, 2022. *See* Ex. N § 2, Certification of the Settlement Class. Accordingly, there is no coverage afforded under the ZAIC CU PAS Policies.

84.     Further, the ZAIC CU PAS Policies do not provide coverage for "personal injury" or "advertising injury" because the ZAIC CU Policies contain an Advertising Injury Exclusion that states the "insurance does not apply to

26

'advertising injury'" and a Personal Injury Exclusion that states the "insurance does not apply to 'personal injury.'" The ZAIC CU PAS Policies define "advertising injury" and "personal injury" each to mean, in relevant part, injury arising out of certain enumerated offenses. *See* Ex. A. Pursuant to these exclusions, the ZAIC CU PAS Policies expressly preclude coverage for "personal injury" and "advertising injury". *See* Ex. A.

85.     Further, beginning in the 2009-2010 Policy Period, the ZAIC CU PAS Policies contain a Violation of Laws Exclusion that provides, in relevant part, that insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" "resulting from or arising directly or indirectly out of any action or omission that violates or is alleged to violate…c. any statute, ordinance or regulation…that prohibits or limits the sending, transmitting, communicating or distribution of material or information." *See* Ex. A.

86.     Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action arise directly or indirectly out of acts or omissions that are alleged to violate statutes that prohibit or limit the sending, transmitting, communicating or distribution of material or information in that they are based on NFI's conduct that violates or is alleged to have violated statutes that prohibit and limit what information and

material NFI can communicate or send to its customers and to third parties. *See* Ex. H, *gen*.

87.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Violation of Laws Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Violation of Laws Exclusion and therefore, coverage is excluded under the ZAIC CU PAS Policies beginning in 2009 on this basis.

88.    Further, beginning in the 2005-2006 Policy Period, the ZAIC CU PAS Policies contain a Disclosure of Information Exclusion that provides, in relevant part, that insurance does not apply to any "bodily injury," "property damage," or "personal and advertising injury" "resulting from or arising out of any actual or alleged violation of…any other federal, state or local regulation or ordinance that imposes liability for the…Unlawful use, collection, dissemination or re-disclosure of personal information in any manner…by any insured…" *See* Ex. A.

89.    Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from or arise out of NFI's violation of statutes that impose liability for the unlawful disclosure of personal information to third parties. *See* Ex. H, *gen*.

90.     Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Disclosure of Information Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Disclosure of Information Exclusion and therefore, coverage is excluded under the ZAIC CU PAS Policies beginning in 2005 on this basis.

91.     Section 1.02 of the ZAIC CU PAS Policies provide when "underlying insurance" does not apply to an "occurrence" or offense and coverage for the "occurrence" or offense is provided by this coverage part, ZAIC has the right and duty to defend any "suit" seeking damages, subject to certain enumerated limitations. The "underlying insurance" for each policy year are the ZAIC CGL PAS policies, which do not provide coverage for the allegations set forth in the Class Action.

92.     Because there is no coverage under the ZAIC CGL PAS policies, and the claims and allegations of the Class Action do not implicate covered "bodily injury" or "property damage" occurring during the policy period and caused by an "occurrence," and/or are otherwise subject to exclusions found in the ZAIC CU PAS Policies, ZAIC has no duty to defend or indemnify NFI in the Class Action,

nor does it have any obligations to NFI or GROSS (as purported assignee) arising from or related to the Class Action

WHEREFORE, Plaintiff, ZURICH AMERICAN INSURANCE COMPANY respectfully requests this court enter declaratory judgment in its favor and against GROSS (as assignee of NFI) as follows:

a. No coverage exists for the Class Action claims under the ZAIC PAS Policies.

b. ZAIC has no duty to defend or indemnify NFI for the Class Action claims or allegations.

c. There was no wrongful denial of coverage by ZAIC, and thereby ZAIC does not owe any obligation to NFI, or GROSS (as a assignee), under the ZAIC PAS Policies relating to or arising from the Class Action.

## COUNT II – AGLIC'S CLAIM FOR DECLARATORY JUDGMENT AGAINST GROSS REGARDING THE AGLIC CGL CPO POLICIES

93.    Plaintiff, AGLIC realleges all previous paragraphs as fully set forth herein.

94.    This is an action for declaratory relief pursuant Fed. R. Civ. P. 57.

95.    The Insuring Agreement for Coverage A of the AGLIC CGL CPO Policies provides coverage for those sums that an insured becomes legally

obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. The AGLIC CGL CPO Policies provide that the insurance applies only if the "bodily injury" or "property damage" occurs during the policy period and is caused by an "occurrence" that takes place in the "coverage territory." Moreover, "occurrence" is defined in the AGLIC CGL CPO Policies to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions". *See* Ex. B.

96.     Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "bodily injury" or "property damage" caused by an "occurrence", as defined. Accordingly, there is no coverage afforded under Coverage A of the AGLIC CGL CPO Policies.

97.     The Insuring Agreement for Coverage B of the AGLIC CGL CPO Policies provide coverage for those sums that an insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies. The AGLIC CGL CPO Policies provide that the insurance applies only to "personal and advertising injury" caused by an offense arising out of the insured's business but only if the offense was committed in the "coverage territory" during the policy period. The AGLIC CGL CPO Policies define "personal

and advertising injury" to mean injury arising out of one or more certain enumerated offenses. *See* Ex. B.

98.    Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "personal and advertising injury", as none of the allegations plead against NFI include any of the enumerated offenses that would meet the definition of "personal and advertising injury", as defined. Accordingly, there is no coverage afforded under Coverage B of the AGLIC CGL CPO Policies.

99.    Additionally, most of the AGLIC CGL CPO Policy period(s) pre-date the class period applicable to the Class Action, as agreed by GROSS and NFI to be between April 1, 2016 and December 1, 2022. *See* Ex. N § 2, Certification of the Settlement Class. Accordingly, there is no coverage afforded under Coverage A or Coverage B of the AGLIC CGL CPO Policies in which the class period falls outside the AGLIC CPO Policy period(s).

100.    As well, both Coverage A and Coverage B of the AGLIC CGL CPO Policies contain a Violation of Laws Exclusion which excludes coverage for "bodily injury," "property damage," and "personal and advertising injury" "directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:"

…(3) The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act; or (4) Any federal, state or local statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

*See* Ex. B.

101.   Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action arise directly or indirectly out of acts or omissions that are alleged to violate statutes that prohibit or limit the sending, transmitting, communicating or distribution of material or information in that they are based on NFI's conduct that violates or is alleged to have violated statutes that prohibit and limit what information and material NFI can communicate or send to its customers and to third parties with respect to debt collection, repossession, disposition and credit reporting. *See* Ex. H, *gen*.

102.   Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Violation of Laws Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Violation of Laws Exclusion and therefore, coverage is excluded under the AGLIC CGL CPO Policies.

103.    The AGLIC CGL CPO Policies also contain a Financial Services Exclusion which provides in relevant part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to: . . . .(3) Lending, or arranging for the lending of money…(4) Repossessing of real or personal property from a borrower or acting as an assignee for the benefit of creditors; (5) Checking or reporting of credit; (6) Maintaining of financial accounts or records . . . .

*See* Ex. B.

104.    Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action result from the rendering of or failure to render financial services by NFI in that they are related to NFI's conduct with respect to its position as creditor of secured collateral and debt owed to it, issuance of notices regarding those financial transactions, repossession of personal property constituting secured collateral, sale of personal property constituting secured collateral, and its obligations and duties for properly maintaining the financial accounts and/or records relating to these transactions. *See* Ex. H, *gen*.

105.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Financial Services Exclusion. There is no claim or allegation against NFI that falls outside of

the scope of the Financial Services Exclusion and therefore, coverage is excluded under the AGLIC CGL CPO Policies.

106.    Further, the 2015-2016 AGLIC CGL CPO Policy contains a Disclosure of Information Exclusion that provides, in relevant part, that insurance does not apply to any "damages arising out of…Any access to or disclosure of any person's or organization's confidential or personal information, including…financial information…or any other type of nonpublic information…" *See* Ex. B.

107.    Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from or arise out of NFI's disclosure of personal, financial, and/or other non-public information to third parties. *See* Ex. H, *gen*.

108.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Disclosure of Information Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Disclosure of Information Exclusion and therefore, coverage is excluded under the AGLIC CGL CPO Policies beginning in 2015 on this basis.

109.    Because the Class Action does not implicate any covered "bodily injury" or "property damage" caused by an "occurrence" or a covered "personal

and advertising injury" as required to activate coverage under the respective Coverage A and Coverage B Insuring Agreements, and the claims and allegations set forth in the Class Action are otherwise subject to exclusions found in the AGLIC CGL CPO Policies, AGLIC has no duty to defend or indemnify NFI in the Class Action, nor does it have any obligations to NFI or GROSS (as purported assignee) arising from or related to the Class Action.

WHEREFORE, Plaintiff, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY respectfully requests this court enter declaratory judgment in its favor and against GROSS (as assignee of NFI), as follows:

a. No coverage exists for the Class Action claims under the AGLIC CGL CPO Policies.

b. AGLIC has no duty to defend or indemnify NFI for the Class Action claims or allegations.

c. There was no wrongful denial of coverage by AGLIC, and thereby AGLIC does not owe any obligation to NFI, or GROSS (as a purported assignee), under the AGLIC CGL CPO Policies relating to or arising from the Class Action.

**COUNT III – AZIC'S CLAIM FOR DECLARATORY JUDGMENT AGAINST GROSS REGARDING THE AZIC CGL CPO POLICIES**

36

110.    Plaintiff, AZIC realleges all previous paragraphs as fully set forth herein.

111.    This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57.

112.    The Insuring Agreement for Coverage A of the AZIC CGL CPO Policies provides coverage for those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. The AZIC CGL CPO Policies provide that the insurance applies only if the "bodily injury" or "property damage" occurs during the policy period and is caused by an "occurrence" that takes place in the "coverage territory". Moreover, "occurrence" is defined in the AZIC CGL CPO Policies to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions". *See* Ex. C.

113.    Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "bodily injury" or "property damage" caused by an "occurrence", as defined. Accordingly, there is no coverage afforded under Coverage A of the AZIC CGL CPO Policies.

114.    The Insuring Agreement for Coverage B of the AZIC CGL CPO Policies provide coverage for those sums that an insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the

insurance applies. The AZIC CGL CPO Policies provide that the insurance applies only to "personal and advertising injury" caused by an offense arising out of the insured's business but only if the offense was committed in the "coverage territory" during the policy period. The AZIC CGL CPO Policies define "personal and advertising injury" to mean injury arising out of one or more certain numerated offenses. *See* Ex. C.

115.   Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for "personal and advertising injury", as none of the claims or allegations plead against NFI include any of the enumerated offenses that would meet the definition of "personal and advertising injury", as defined. Accordingly, there is no coverage afforded under Coverage B of the AZIC CGL CPO Policies.

116.   As well, the AZIC CGL CPO Policies contain a Violation of Laws Exclusion which excludes coverage for "bodily injury," "property damage," and "personal and advertising injury" "directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:"

> …(3) The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act; or (4) Any federal, state or local statute, ordinance or regulation, other than TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal,

monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.
*See* Ex. C.

117.   Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action arise directly or indirectly out of acts or omissions that are alleged to violate statutes that prohibit or limit the sending, transmitting, communicating or distribution of material or information in that they are based on NFI's conduct that is alleged to have violated statutes that prohibit and limit what information and material NFI can communicate or send to its customers and to third parties with respect to debt collection, repossession, disposition and credit reporting. *See* Ex. H, *gen*.

118.   Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Violation of Laws Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Violation of Laws Exclusion and therefore, coverage is excluded under the AZIC CGL CPO Policies.

119.   The AZIC CGL CPO Policies also contain a Financial Services Exclusion which provides in relevant part:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" resulting from the rendering of or the failure to render financial services by any insured to others. For the purpose of this exclusion, financial services include but are not limited to: . . . .(3) Lending, or arranging for the lending of money… (4) Repossessing of real

or personal property from a borrower or acting as an assignee for the benefit
of creditors; (5) Checking or reporting of credit; (6) Maintaining of financial
accounts or records . . .
*See* Ex. C.

120.    Based on the allegations contained in the operative pleading and the

underlying judgment, all of the claims and damages in  the Class Action result

from the rendering of or failure to render financial services by NFI in that they are

related to NFI's conduct with respect to its position as creditor of secured collateral

and debt owed to it, issuance of notices regarding those financial transactions,

repossession of personal property constituting secured collateral, sale of personal

property constituting secured collateral, and its obligations and duties for

properly maintaining the financial accounts and/or records relating to these

transactions. *See* Ex. H, *gen*.

121.    Accordingly, based on the allegations in the operative pleading and

the underlying judgment, the Class Action claims are all excluded by the Financial

Services Exclusion. There is no claim or allegation against NFI that falls outside of

the scope of the Financial Services Exclusion and therefore, coverage is excluded

under the AZIC CGL CPO Policies.

122.    Further, the AZIC CGL CPO Policies contain a Disclosure of

Information Exclusion that provides, in relevant part, that insurance does not

apply to any "damages arising out of…Any access to or disclosure of any person's

or organization's confidential or personal information, including…financial information…or any other type of nonpublic information…" This exclusion applies to Coverage B for all the AZIC CGL CPO Policies and to Coverage A for the 2016-2017 policy period and 2017-2018 policy period AZIC CGL CPO Policies. *See* Ex. C.

123.   Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from or arise out of NFI's disclosure of personal, financial, and/or other non-public information to third parties. *See* Ex. H, *gen*.

124.   Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Disclosure of Information Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Disclosure of Information Exclusion and therefore, coverage is excluded under the AGLIC CGL CPO Policies on this basis.

125.   Because the Class Action does not implicate any covered "bodily injury" or "property damage" caused by an "occurrence" or a covered "personal and advertising injury" as required to activate coverage under the respective Coverage A and Coverage B Insuring Agreements, and the claims and allegations set forth in the Class Action are otherwise subject to exclusions found in the AZIC

41

CGL CPO Policies, AZIC has no duty to defend or indemnify NFI in the Class Action, nor does it have any obligations to NFI or GROSS (as purported assignee) arising from or related to the Class Action.

WHEREFORE, Plaintiff, AMERICAN ZURICH INSURANCE COMPANY respectfully requests this court enter declaratory judgment in its favor and against GROSS (as assignee of NFI) as follows:

a.  No coverage exists for the Class Action claims under the AZIC CGL CPO Policies.

b.  AZIC has no duty to defend or indemnify NFI for the Class Action claims and allegations.

c.  There was no wrongful denial of coverage by AZIC, and thereby AZIC does not owe any obligation to NFI, or GROSS (as a purported assignee), under the AZIC CGL CPO Policies relating to or arising from the Class Action.

## COUNT IV – AGLIC'S CLAIM FOR DECLARATORY JUDGMENT AGAINST GROSS REGARDING THE AGLIC CU AUC POLICIES

126.   Plaintiff, AGLIC realleges all previous paragraphs as fully set forth herein.

127.   This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57.

128.    The AGLIC CU AUC Policies are Commercial Umbrella Liability Policies.

129.    Coverage A of the AGLIC CU AUC Policies provide that that they are excess follow form liability insurance and that "if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages." The underlying coverage for each policy year is the respective CGL CPO policy issued by AGLIC or AZIC. *See* Ex. D.

130.    As set forth in Counts II and III herein, there is no coverage under the AGLIC or AZIC CGL CPO Policies. Accordingly, there is no coverage under Coverage A of the AGLIC CU AUC Policies.

131.    The Insuring Agreement for Coverage B of the AGLIC CU AUC Policies provides coverage for "damages the insured becomes legally obligated to pay by reason of liability…imposed by law because of 'bodily injury', 'property damage,' or 'personal and advertising injury…covered by this insurance but only if the injury or damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an 'occurrence' happening anywhere." *See* Ex. D.

132.   The AGLIC CU AUC Policies define "occurrence" with respect to "bodily injury" or "property damage" liability to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." With respect to "personal and advertising injury," "occurrence" is defined to mean "a covered offense." "Personal and advertising injury" is defined to mean injury arising out of one or more of the enumerated offenses. *See* Ex. D.

133.   Neither the operative pleading nor the judgment in the Class Action alleges or imposes liability on the part of NFI for covered "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence", as defined. Accordingly, there is no coverage afforded under Coverage B of the AGLIC CU AUC Policies.

134.   Additionally, many of the AGLIC CU AUC Policy period(s) pre-date the class period applicable to the Class Action, as agreed by GROSS and NFI to be between April 1, 2016 and December 1, 2022. *See* Ex. N § 2, Certification of the Settlement Class. Accordingly, there is no coverage afforded under the AGLIC CU AUC Policies in which the class period falls outside the AGLIC CU AUC policy period(s).

135.   Because there is no coverage under Coverage A of Coverage B of the AGLIC CU AUC Policies, AGLIC had no duty to defend or indemnify NFI in the

Class Action, nor does it have any obligations arising from or related to the Class

Action Settlement Agreement and Release.

136.   Moreover, beginning in 2014, the AGLIC CU AUC Policies contain a

Violation of Laws Exclusion, which provides that the policy does not apply to any

liability, damage, loss, cost, or expense:

> Directly or indirectly arising out of any action or omission that violates or
> is alleged to violate: (a) The Telephone Consumer Protection Act (TCPA),
> including any amendment of or addition to such law; (b) The CAN-SPAM
> Act of 2003, including any amendment of or addition to such law; (c) The
> Fair Credit Reporting Act (FCRA) and any amendment or addition to such
> law including the Fair and Accurate Credit Transactions Act (FACTA); or
> (d) Any federal, state or local statute, ordinance, or regulation, other than
> the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and
> additions, or any other legal liability, at common law or otherwise, that
> addresses, prohibits, or limits the printing, dissemination, disposal,
> monitoring, collecting, recording, use of, sending, transmitting,
> communicating or distribution of material or information.

*See* Ex. D.

137.   Based on the allegations contained in the operative pleading and the

underlying judgment, all of the claims and damages in  the Class Action arise

directly or indirectly out of acts or omissions that are alleged to violate statutes

that prohibit or limit the sending, transmitting, communicating or distribution of

material or information in that they are based on NFI's conduct that is alleged to

have violated statutes that prohibit and limit what information and material NFI

can communicate or send to its customers and to third parties with respect to debt

collection, repossession, disposition and credit reporting. *See* Ex. H, *gen*.

45

138.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Violation of Laws Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Violation of Laws Exclusion and therefore, coverage is excluded under the AGLIC CU AUC Policies.

139.    The AGLIC CU AUC Policies also contain a Professional Services Exclusion which provides:

> [T]his policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission of any insured, or any person for whom the insured is legally responsible, in the rendering of, or failure to render, any professional service.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the liability, damage, loss, cost or expense involved the rendering of, or failure to render, any professional service.

*See* Ex. D.

140.    Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from the rendering of or failure to render professional services by NFI in that they are related to NFI's conduct that requires specialized skill, training and knowledge and is subject to governmental or other regulation for which NFI receives compensation or other valuable consideration. *See* Ex. H, *gen*.

141.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Professional Services Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Professional Services Exclusion and therefore, coverage is excluded under the AGLIC CU CPO Policies on this basis.

142.    The AGLIC CU AUC Policy No. AUC 5781728-06, effective December 22, 2019, through April 1, 2020, also contains a Financial Professional Services Exclusion which states:

> [T]his policy does not apply to any liability, damage, loss, cost or expense arising out of the rendering of, or failure to render, any professional services.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the liability, damage, loss, cost or expense, involved the rendering of, or the failure to render, professional services by any insured to others.
>
> [] As used in this endorsement professional services means those services rendered, or required to be rendered, to others pursuant to an agreement and for a fee or other payment and include non-compensated services, provided they are rendered, or required to be rendered, in connection with paid services. They include but are not limited to services arising out of investment banking, lending, financial counseling, insurance operations, real estate operation and appraisal services.

*See* Ex. D.

143.    Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in  the Class Action result from the rendering of or failure to render financial services by NFI in that they are

related to NFI's conduct with respect to its position as creditor of secured collateral and debt owed to it, issuance of notices regarding those financial transactions, repossession of personal property constituting secured collateral, sale of personal property constituting secured collateral, and its obligations and duties for properly maintaining the financial accounts and/or records relating to these transactions. *See* Ex. H, *gen*.

144.    Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Financial Professional Services Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Financial Services Exclusion and therefore, coverage is excluded under the AGLIC CU AUC Policies beginning in 2019 on this basis.

145.    Further, the AGLIC CU AUC Policies contain a Disclosure of Information Exclusion that provides, in relevant part, that insurance does not apply to any "liability, damage, 'loss', cost or expense…arising out of…Any access to or disclosure of any person's or organization's confidential or personal information, including…financial information…or any other type of nonpublic information…" *See* Ex. D.

146.   Based on the allegations contained in the operative pleading and the underlying judgment, all of the claims and damages in the Class Action result from or arise out of NFI's disclosure of personal, financial, and/or other non-public information to third parties. *See* Ex. H, *gen*.

147.   Accordingly, based on the allegations in the operative pleading and the underlying judgment, the Class Action claims are all excluded by the Disclosure of Information Exclusion. There is no claim or allegation against NFI that falls outside of the scope of the Disclosure of Information Exclusion and therefore, coverage is excluded under the AGLIC CU AUC Policies on this basis.

148.   Because the underlying insurance does not provide coverage for the Class Action, thereby activating Coverage A of the AGLIC CU AUC Policies, and the allegations and claims set forth in the Class Action do not implicate covered "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence" under Coverage B, and/or are subject to exclusions found in the AGLIC CU AUC Policies, AGLIC has no duty to defend or indemnify NFI in the Class Action, nor does it have any obligations to NFI or GROSS (as purported assignee) arising from or related to the Class Action.

WHEREFORE, Plaintiff, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY respectfully requests this court enter declaratory judgment in its favor and against GROSS (as assignee of NFI) as follows:

    a. No coverage exists for the Class Action claims under the AGLIC CU AUC Policies.

    b. AGLIC has no duty to defend or indemnify NFI for the Class Action claims or allegations.

    c. There was no wrongful denial of coverage by AGLIC, and thereby AGLIC does not owe any obligation to NFI, or GROSS (as a purported assignee), under the AGLIC CU AUC Policies relating to or arising from the Class Action.

## COUNT V – DECLARATORY RELIEF AGAINST HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY

149.  Plaintiffs reallege all previous paragraphs as fully set forth herein.

150.  This is an action for declaratory relief pursuant to Fed. R. Civ. P.

151.  HARTFORD issued commercial liability policies and commercial umbrella liability policies to NFI for subsequent years following the expiration of the Zurich Policies. *See* Ex. E, Ex. F, and Ex. G.

152.    The relevant terms, provisions, limitations and exclusions contained in the Hartford Policies are substantively similar and/or identical to those contained in the Zurich Policies.

153.    The Hartford Policies insure NFI for policy periods following the Zurich Policies and are included within the class period applicable to the Class Action, as agreed by GROSS and NFI to be between April 1, 2016 and December 1, 2022. *See* Ex. N § 2, Certification of the Settlement Class.

154.    Therefore, to the extent there is any duty to defend and/or indemnify under the Zurich Policies, there is a similar duty to defend and/or indemnify under the Hartford Policies with respect to the relevant policy years.

WHEREFORE, Plaintiffs respectfully requests this court enter declaratory judgment in its favor and against HARTFORD as follows:

a.    A declaration that to the extent the Court finds Plaintiffs have a duty to defend or indemnify GROSS (as assignee of NFI), that Plaintiffs and HARTFORD share a pro rata obligation under the respective Zurich Policies and Hartford Policies issued to NFI, relating to or arising from the Class Action; and

b.    A declaration to the extent the Court finds that Plaintiffs and HARTFORD have any obligation to GROSS (as assignee of NFI),

under the respective Zurich Policies and Hartford Policies issued to NFI, that any such defense or indemnity obligation be allocated based upon the respective policy years in relation to the claims presented in the Class Action.

## COUNT VI- CONTRIBUTION AGAINST HARTFORD INSURANCE COMPANY OF THE MIDWEST

155.   Plaintiffs reallege all previous paragraphs as fully set forth herein.

156.   NFI was a Named Insured under the Zurich Policies and Hartford Policies.

157.   Gross (as Assignee of NFI) contends that the Zurich Policies and HICM CGL Policies provide coverage for the claims presented against NFI in the Class Action.

158.   Should Plaintiffs be found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, HICM has a similar defense and indemnification obligation owed, under the respective policies.

159.   Accordingly, to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, Plaintiffs are entitled to contribution from HICM for its allocated share based upon the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI ) in the Class Action, that the Court enter final judgment for damages against HICM in the amount of its allocated share of any  liability to NFI , together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

## COUNT VII-EQUITABLE SUBROGATION AGAINST HARTFORD INSURANCE COMPANY OF THE MIDWEST

160.   Plaintiffs reallege all previous paragraphs as fully set forth herein.

161.   Plaintiffs bring this claim for equitable subrogation in the alternative, should this Court find Plaintiffs are not entitled to damages under Count VI for contribution.

162.   NFI was a Named Insured under the Zurich Policies and the Hartford Policies.

163.   If found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI), Plaintiffs will be forced to pay amounts on behalf of the mutual insured.

164.   Plaintiffs will not make this payment voluntarily and the payment made will be for the benefit of the mutual insured.

165.    Plaintiffs will not be primarily liable for the amounts paid because Plaintiffs will discharge their allocated share of the obligation.

166.    Equitable subrogation would not work any injustice to the rights of any third party.

167.    As such, to the extent Plaintiffs are found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI), Plaintiffs are the equitable subrogees of the mutual insured, and are entitled to GROSS' (as assignee of NFI) rights and priorities against HICM.

168.    Plaintiffs stand in the shoes of GROSS (as assignee of NFI), who may be entitled to indemnity from HICM for damages allocated based the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, that the Court enter final judgment for damages against HICM, together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

## COUNT VIII- CONTRIBUTION AGAINST HARTFORD FIRE INSURANCE COMPANY

169.    Plaintiffs reallege all previous paragraphs as fully set forth herein.

170.    NFI was a Named Insured under the Zurich Policies and the Hartford Policies.

171.    Gross (as Assignee of NFI) contends that the Zurich Policies and HFIC CGL Policies provide coverage for the claims presented against NFI in the Class Action.

172.    Should Plaintiffs be found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, HFIC has a similar defense and indemnification obligation owed, under the respective policies.

173.    Accordingly, to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, Plaintiffs are entitled to contribution from HICM for its allocated share based upon the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI ) in the Class Action, that the Court enter final judgment for damages against HFIC in the amount of its allocated share of any liability to NFI , together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

## COUNT IX-EQUITABLE SUBROGATION AGAINST HARTFORD FIRE INSURANCE COMPANY

174.   Plaintiffs reallege all previous paragraphs as fully set forth herein.

175.   Plaintiffs bring this claim for equitable subrogation in the alternative, should this Court find Plaintiffs are not entitled to damages under Count VIII for contribution.

176.   NFI was a Named Insured under the Zurich Policies and the Hartford Policies.

177.   If found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI), Plaintiffs will be forced to pay amounts on behalf of the mutual insured.

178.   Plaintiffs will not make this payment voluntarily and the payment made will be for the benefit of the mutual insured.

179.   Plaintiffs will not be primarily liable for the amounts paid because Plaintiffs will discharge their allocated share of the obligation.

180.   Equitable subrogation would not work any injustice to the rights of any third party.

181.   As such, to the extent Plaintiffs are found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI), Plaintiffs are the equitable subrogees of the mutual insured, and are entitled to GROSS' (as assignee of NFI) rights and priorities against HFIC.

182.    Plaintiffs stand in the shoes of GROSS (as assignee of NFI), who may be entitled to indemnity from HFIC for damages allocated based the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, that the Court enter final judgment for damages against HFIC, together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

## COUNT X-CONTRIBUTION AGAINST HARTFORD CASUALTY INSURANCE COMPANY

183.    Plaintiffs reallege all previous paragraphs as fully set forth herein.

184.    NFI was a Named Insured under the Zurich Policies and Hartford Policies.

185.    Gross (as Assignee of NFI) contends that the Zurich Policies and the HCIC CU Policies provide coverage for the claims presented against NFI in the Class Action.

186.    Should Plaintiffs be found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, HCIC has a similar defense and indemnification obligation owed, under the respective policies.

187.   Accordingly, to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, Plaintiffs are entitled to contribution from HCIC for its allocated share based upon the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI ) in the Class Action, that the Court enter final judgment for damages against HCIC in the amount of its allocated share of any liability to NFI , together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

## COUNT XI- EQUITABLE SUBROGATION AGAINST HARTFORD CASUALTY INSURANCE COMPANY

188.   Plaintiffs reallege all previous paragraphs as fully set forth herein.

189.   Plaintiffs bring this claim for equitable subrogation in the alternative, should this Court find Plaintiffs are not entitled to damages under Count X for contribution.

190.   NFI was a Named Insured under the Zurich Policies and the Hartford Policies.

191.   If found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI ), Plaintiffs will be forced to pay amounts on behalf of the mutual insured.

192.   Plaintiffs will not make this payment voluntarily and the payment made will be for the benefit of the mutual insured.

193.   Plaintiffs will not be primarily liable for the amounts paid because Plaintiffs will discharge their allocated share of the obligation.

194.   Equitable subrogation would not work any injustice to the rights of any third party.

195.   As such, to the extent Plaintiffs are found to owe a duty to defend and/or indemnify GROSS (as assignee of NFI), Plaintiffs are the equitable subrogees of the mutual insured, and are entitled to GROSS' (as assignee of NFI ) rights and priorities against HCIC.

196.   Plaintiffs stand in the shoes of GROSS (as assignee of NFI), who may be entitled to indemnity from HCIC for damages allocated based the respective policy years in relation to the claims presented in the Class Action.

WHEREFORE, Plaintiffs respectfully request that to the extent Plaintiffs are found to have a duty to defend and/or indemnify GROSS (as assignee of NFI) in the Class Action, that the Court enter final judgment for damages against HCIC,

together with pre- and post-judgment interest and costs, along with any such other legal and equitable relief as this Court deems proper and just.

***

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and AMERICAN ZURICH INSURANCE COMPANY, request the entry of a Final Declaratory Judgment declaring the parties' respective rights, obligations, and responsibilities under the insurance policies identified herein, together with an award of all other appropriate attendant relief, and costs against the Defendants, JEREMIAH T. GROSS, as assignee of NICHOLAS FINANCIAL, INC., HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY, and for entry of judgment in favor of ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and AMERICAN ZURICH INSURANCE COMPANY and against HARTFORD INSURANCE COMPANY OF THE MIDWEST, HARTFORD FIRE INSURANCE COMPANY, and HARTFORD CASUALTY INSURANCE COMPANY on their contribution and equitable subrogation claims and for such other relief the Court deems appropriate.

60

Dated this **18th** day of **September, 2024**.

By:     /s/ Irene Porter
        IRENE PORTER
        Florida Bar No. 567280
        HICKS, PORTER, EBENFELD
         & STEIN, P.A.
        5301 Blue Lagoon Drive, Suite 900
        Miami, FL 33126
        Tel:   305/374-8171
        Fax:   305/372-8038
        Primary email:  iporter@mhickslaw.com
        Secondary emails: eclerk@mhickslaw.com
        bpaz@mhickslaw.com
        *Co-counsel for Plaintiffs, Zurich*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **September 18, 2024**, a true and correct copy of

the foregoing was filed using the Court's Electronic Filing system (CM/ECF) that

will serve a copy on:

Robert Shawn Hogue, Esq.
K&L Gates LLP
Southeast Financial Center
200 S. Biscayne Blvd., Ste.3900
Miami, FL 33131-2399
Tel:   305/539-3300
Fax:   305/358-7095
shawn.hogue@klgates.com
*Counsel for Defendant, Jeremiah T. Gross*

Ilana B. Olman, Esq.
Nicholas E. Richardson, Esq.
Segal McCambridge Singer
 & Mahoney, Ltd.

200 East Las Olas Blvd., Ste. 1820
Fort Lauderdale, FL 33301
Tel:   954/765-1001
Fax:   954/765-1005
iolman@smsm.com
nrichardson@smsm.com
ibopleadings@smsm.com
*Counsel for Plaintiffs, Zurich*

By:   /s/ Irene Porter
       IRENE PORTER
       Florida Bar No. 567280